PEOPLE v JERRY JOHNSON
PEOPLE v DAWN MARIE JOHNSON

1. CRIMINAL LAW—INFERENCES—JOINT OWNERSHIP—POSSESSION OF
   MARIJUANA—INTENT TO DELIVER.

   It is not a fair inference to assume, from joint ownership of a
   house trailer, a specific intent to deliver any of the contents of
   the trailer; therefore, a jury's conviction of a defendant for
   possession of marijuana with intent to deliver was based upon
   an unfair inference of intent to deliver where there was abso-
   lutely no evidence introduced against the defendant other than
   possible joint ownership of the house trailer in which mari-
   juana was found.

2. CRIMINAL LAW—INFERENCES—IMPERMISSIBLE INFERENCES—POSSES-
   SION OF MARIJUANA—CIRCUMSTANTIAL EVIDENCE.

   It would be an impermissible inference built upon another infer-
   ence, both based upon the same circumstantial evidence, to find
   that joint possession of marijuana is a reasonable inference to
   be drawn from the joint ownership of a house trailer in which
   the marijuana is found and that intent to deliver is a reasona-
   ble inference to be drawn from the before-inferred possession of
   marijuana.

3. WITNESSES—CRIMINAL LAW—RES GESTAE WITNESSES—NONPRODUC-
   TION OF WITNESSES—CUMULATIVE TESTIMONY—REMAND.

   A prosecution's nonproduction of a res gestae witness, in the
   absence of a diligent effort to produce the witness at trial, is
   reversible error where it does not appear that the witness
   would have given testimony which was merely cumulative had
   he been produced by the prosecution; therefore, the Court of
   Appeals should remand for a hearing to determine whether or
   not the witness's testimony would have been merely cumula-
   tive.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 25 Am Jur 2d, Drugs, Narcotics, and Poisons § 47.
[3] 29 Am Jur 2d, Evidence § 708 et seq.
[4–6] 68 Am Jur 2d, Searches and Seizures §§ 64–66.

4. SEARCHES AND SEIZURES—SEARCH WARRANTS—SUPPORTING AFFIDA-
   VITS—UNDERLYING CIRCUMSTANCES—PERSONAL KNOWLEDGE OF
   AFFIANT.

   An affidavit in support of a search warrant meets the require-
   ments as set forth by the United States Supreme Court where
   the affidavit contains sufficient information to inform a magis-
   trate of the underlying circumstances from which the infor-
   mant concluded that the contraband was where the informant
   claimed it was and the affiant swears as of his own personal
   knowledge that the informant is credible and reliable.

5. SEARCHES AND SEIZURES—SEARCH WARRANTS—MAGISTRATES—SUP-
   PORTING AFFIDAVITS—RELIABILITY OF ANONYMOUS INFORMANTS.

   A magistrate, in determining whether or not an affidavit in
   support of a search warrant is sufficient, may require more
   information from certain affiants than from others before
   reaching a determination as to the reliability of anonymous
   informants in different cases; this is a decision for the magis-
   trate and not for the Court of Appeals.

6. SEARCHES AND SEIZURES—SEARCH WARRANTS—MAGISTRATES—SUP-
   PORTING AFFIDAVITS—INFORMANTS—AFFIANTS.

   Simply because a magistrate, in determining whether or not an
   affidavit in support of a search warrant is sufficient, chooses to
   believe an affiant who claims he has information from an
   informant known to the affiant to be reliable, is no reason for
   the Court of Appeals to conclude that the magistrate has not
   acted as a "neutral and detached magistrate" in drawing
   "inferences from the facts which led to the complaint".

Appeal from Barry, Willard L. Mikesell, J. Sub-
mitted March 3, 1976, at Grand Rapids. (Docket
Nos. 22204, 22205.) Decided May 17, 1976.

Jerry R. Johnson and Dawn Marie Johnson,
husband and wife, were convicted of possession of
marijuana with intent to deliver. Defendants ap-
peal. Reversed as to Dawn Marie Johnson. Re-
manded as to Jerry R. Johnson.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *David A. Dimmers,*
Prosecuting Attorney (Prosecuting Attorneys Ap-

pellate Service, by *Thomas C. Nelson,* Assistant Attorney General, of counsel), for the people.

*Wickett, Erickson, & Beach, P. C.,* for defendants.

Before: DANHOF, P. J., and D. E. HOLBROOK and ALLEN, JJ.

D. E. HOLBROOK, J. Defendants, husband and wife, were convicted of possession of marijuana with intent to deliver. MCLA 335.341(1)(c); MSA 18.1070(41)(1)(c). Defendant Jerry Johnson was sentenced to a prison term of 18 months to 4 years, while defendant Dawn Marie Johnson was sentenced to a term of 13 months to 4 years. Defendants appeal as of right.

Sometime on the evening of January 21, 1974, the police arrived at the house trailer residence of defendants. The police were armed with a search warrant which was based on an affidavit which reads in part:

"1) That the following property constitutes evidence of criminal conduct:

"Large quantity of marijuana controlled and possessed by Jerry R. Johnson in the living room and bedroom of the residence of Jerry R. Johnson."

When the police entered the house trailer, they did find nearly a pound of marijuana. Several other people, guests of the defendants, were also present in the trailer. However, none of the people in the trailer was exercising apparent control over the marijuana seized. Defendant Jerry R. Johnson was arrested. Defendant Dawn Marie Johnson was not arrested until the next day when she went to visit her husband in jail. At trial, the arresting

officer was asked the reason for placing Dawn Johnson in custody:

"*Q. (defense attorney):* Would it not be correct to say that you arrested Dawn Marie Johnson or at least she was arrested because of your belief that whatever was in that home was the joint property of the two of them, the husband and wife, and not from any acts on the part of Dawn Marie Johnson?

"*A.* That would be true."

The sum total of the evidence against defendant Dawn Marie Johnson was that she lived with her husband, Jerry Johnson. We should first point out that joint ownership of the house trailer was never proved by the prosecution. But assuming without deciding that defendants were joint owners of the house trailer it is possible that such joint ownership could lead to an inference of joint possession of the contents of the house trailer. However, it would not be a "fair inference" to assume, from joint ownership of the house trailer, a specific intent to "deliver" any of the contents of the trailer. This is in fact the inference which the jury must have drawn in this case with regard to Dawn Marie Johnson, since she was convicted of possession of marijuana with intent to deliver. Since there was absolutely no evidence, other than possible joint ownership of the trailer, introduced against Dawn Marie Johnson, we hold that the jury based her conviction upon an unfair inference of intent to deliver. *People v Atley,* 392 Mich 298; 220 NW2d 465 (1974). If it is argued that joint possession of the marijuana is a reasonable inference to be drawn from joint ownership of the house trailer, and that intent to deliver is a reasonable inference to be drawn from the before-inferred possession, then this would be an imper-

missible inference built upon another inference, both based upon the same circumstantial evidence. *Atley, supra, People v Gordon,* 60 Mich App 412; 231 NW2d 409 (1975).

During the search which led to the arrest of defendant Jerry Johnson, the police discovered that one of the parties present in the house trailer had, in his automobile, a plastic bag with a brownish-green substance in it. This person, Douglas Magnum, was not arrested, and neither was anyone else other than defendant Jerry Johnson.

At trial, the prosecution called as witnesses all of the persons, other than defendants, who had been present in the trailer on the night of the search with the exception of witness Magnum. The defendants insisted that witness Magnum be produced, arguing that his testimony would not merely be cumulative because, unlike the other res gestae witnesses, he had had in his car a plastic bag with a small amount of a "brownish-green substance" in it. Defendants indicated that their cross-examination of witness Magnum might shed some light on the manner in which the marijuana came to be in their house trailer. Further, since witness Magnum had been in the trailer on the previous evening, defendants contended that there was a good likelihood that he might have been the secret police informant. Defendants had earlier indicated a possible desire to put forth an entrapment defense if they were allowed to interview the police informant. We agree with defendants that it does not appear that witness Magnum would have given testimony which was merely cumulative had he been produced by the prosecution. Therefore, in the absence of a diligent effort to produce the witness at trial, his nonproduction would be reversible error.

The trial court specifically held that the nonproduction of the witness was not, in this case, excused by due diligence. The trial court concluded that the absent witness's testimony would have been merely cumulative, however, and that the situation could be remedied by a jury instruction to the effect that the jury could assume that the absent witness would have given testimony favorable to the defendants had he been called. The people argue that such an instruction on the part of the trial judge was sufficient to overcome any prejudice to defendants, citing *People v Gordon, supra,* and *People v Barker,* 18 Mich App 544; 171 NW2d 574 (1969). The cases cited by the prosecution are distinguishable. In *Barker,* the court below had actually found due diligence on the part of the prosecution. In the case before us the court below found that the prosecution failed to exercise due diligence in attempting to produce the witness. In *Gordon,* the defense made no request or demand at trial that the witness in question be produced. In the case before us, the defendants made repeated demands that the witness be produced, and supported their demands with reasonable arguments. Therefore, we remand for a hearing based on *People v Robinson,* 391 Mich 555; 218 NW2d 1 (1974). If, on remand, the witness cannot be produced, then defendant Jerry Johnson's conviction must be reversed since the lower court held that he was a res gestae witness and that the prosecution did not exercise due diligence in attempting to obtain his presence, and since we have held here that the facts below are not sufficient to warrant a finding that his testimony would be merely cumulative. If the witness is produced, and, after hearing his testimony, the court is at that time convinced that it is merely cumulative, then

defendant Jerry Johnson's conviction will be affirmed. If the witness is produced, and, after hearing his testimony, the court is convinced that it contains new evidence of a material nature, then a new trial is ordered as to defendant Jerry Johnson.

One final issue must be dealt with since it is certain to arise again should a new trial be ordered for defendant Jerry Johnson. Defendants allege that the affidavit which supports the search warrant in this case fails to meet the requirements as set forth by the United States Supreme Court in *Aguilar v Texas,* 378 US 108; 84 S Ct 1509; 12 L Ed 2d 723 (1964). The *Aguilar* case concerned the following affidavit:

> " 'Affiants have received reliable information from a credible person and do believe that heroin, marijuana, barbiturates and other narcotics and narcotic paraphernalia are being kept at the above described premises for the purpose of sale and use contrary to the provisions of the law.' " 378 US 109; 84 S Ct 1511; 12 L Ed 2d 725.

The Court held that the above affidavit was insufficient to allow the magistrate to determine that probable cause existed and that a warrant should be issued. The Court stated at 378 US 114; 84 S Ct 1514; 12 L Ed 2d 729:

> "Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, * * * the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, * * * was 'credible' or his information 'reliable.' " (Citations omitted.)

The affidavit in the case below reads partly as follows:

"That your deponent is a member of the Barry County Sheriff's Department and that a credible person known to your deponent as a credible and reliable person was in the residence at 5795 Guernsey Lake Road, Barry County, Michigan, on January 20, 1974, at approximately, to wit: 7:30 p.m. in the residence of Jerry R. Johnson; that said credible person observed the above stated large quantity of marijuana in said living room and bedroom of the residence of Jerry R. Johnson at said location at said time and date and that said credible person gave reliable information to your deponent and said information was spoken with the personal knowledge of said credible person."

Certainly this affidavit contains sufficient information to inform the magistrate of the underlying circumstances from which the informant concluded that the contraband was where he claimed it was. This affidavit also differs from that in *Aguilar* in that the *Aguilar* affidavit simply stated that the information had been received from a credible person, while in the affidavit in the instant case, it was stated that the credible person was "known to your deponent as a credible and reliable person". Thus, in the case before us, the affiant is swearing that, by his own personal knowledge, the informant is reliable. The magistrate may choose to believe or disbelieve the affiant; similarly, he would be forced to believe or disbelieve the affiant had it been sworn that the informant had given reliable information in the past. A magistrate may require more information from certain affiants than from others before reaching a determination as to the reliability of anonymous informants in different cases, but that is a decision for the magistrates, and not for this

Court. Simply because a magistrate chooses to believe an affiant who claims he has information from an informant known to him to be reliable, is no reason for this Court to conclude that the magistrate has not acted as a "neutral and detached magistrate" in drawing "inferences from the facts which led to the complaint". *Aguilar, supra,* 378 US 115; 84 S Ct 1514; 12 L Ed 2d 729.

Reversed as to defendant Dawn Marie Johnson.

Remanded for proceedings consistent with this opinion as to defendant Jerry R. Johnson.