PEOPLE v JERRY JOHNSON (AFTER REMAND)

Docket No. 77-1573. Submitted February 9, 1978, at Grand Rapids.—
Decided October 17, 1978. Leave to appeal denied, 406 Mich —.

Jerry R. Johnson was convicted of possession of marijuana with intent to deliver. The defendant appealed. The Court of Appeals remanded to the trial court for a *Robinson* hearing to determine whether the testimony of a res gestae witness, who was not produced at trial, might have affected the results in the case, 68 Mich App 697 (1976). The missing witness was located and produced for a hearing. After the hearing in Barry Circuit Court, Richard Robinson, J., it was determined that the testimony was merely cumulative and that the defendant was not entitled to a new trial. The defendant appeals, alleging that the trial court erred in ruling that the testimony of the witness was cumulative. *Held:*

The defendant is entitled to a new trial since it is quite clear that the testimony of this witness may well lead to a different verdict.

Reversed and remanded.

J. H. GILLIS, P.J., dissented. He would hold that the trial court's determination was correct because the testimony of the witness offered no further enlightenment as to the transaction in question. He would affirm.

OPINION OF THE COURT

1. WITNESSES—CRIMINAL LAW—RES GESTAE WITNESSES—FAILURE TO PRODUCE WITNESS—NEW TRIAL—ROBINSON HEARING.

A defendant is entitled to a new trial based upon the prosecution's failure to produce a res gestae witness at trial where, in the defendant's initial appeal, the Court of Appeals remanded to the trial court to hold a *Robinson* hearing, at which the formerly missing witness testified, and the Court of Appeals is now convinced that the witness's testimony is clearly more

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 58 Am Jur 2d, New Trial §§ 41, 169, 171, 179.
 81 Am Jur 2d, Witnesses § 2.
[3] 21 Am Jur 2d, Criminal Law §§ 349, 351-353.

than cumulative and may well lead to a different verdict at a new trial.

2. Witnesses—Criminal Law—Res Gestae Witnesses—Failure to Produce Witness—Robinson Hearing—New Trial.

   *A defendant is not entitled to a new trial, based on the prosecution's failure to produce a res gestae witness at trial, where the trial court, subsequent to trial, held a Robinson hearing at which the missing witness testified, and a careful review of the record supports the trial court's determination that the witness's testimony offered no further enlightenment as to the transaction in question other than the testimony originally presented at the defendant's trial.*

3. Witnesses—Criminal Law—Constitutional Law—Privilege Against Self-Incrimination.

   *It is improper for the prosecution or defense to call a witness to testify where it is known before-hand that the witness is going to assert his Fifth Amendment privilege against self-incrimination and refuse to answer questions.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Gary R. Holman,* Prosecuting Attorney (Prosecuting Attorneys Appellate Service, *Thomas C. Nelson,* Assistant Attorney General, of counsel), for the people.

*Wickett, Erickson, Bartl & Haslett, P.C.,* for defendant on appeal.

Before: J. H. Gillis, P.J., and R. B. Burns and Allen, JJ.

Allen, J. On October 31, 1974, defendant was convicted by a jury in Barry County Circuit Court of possession of marijuana with intent to deliver, contrary to MCL 335.341(1)(c); MSA 18.1070(41)(1)(c). The case was subsequently appealed to this Court, *People v Jerry Johnson,* 68 Mich App 697; 243 NW2d 715 (1976), and re-

manded for a hearing pursuant to *People v Robinson,* 391 Mich 555; 218 NW2d 1 (1974). The record reveals that the prosecution failed to produce a res gestae witness whose testimony could have been relevant to important issues disputed at trial.

Upon remand, the missing res gestae witness was located and a hearing was held for the purpose of taking his testimony on September 3, 1976. After the hearing, the trial court ruled that the missing witness's testimony was merely cumulative and, hence, defendant was not entitled to a new trial. Defendant appeals, contending that the trial court erred in ruling that the testimony of the missing witness was cumulative.

We agree with defendant. At the hearing upon remand the formerly missing res gestae witness invoked the Fifth Amendment on four occasions. On key questions his testimony was evasive. The transcript is illustrative:

"Q. *[Mr. Wickett, defense counsel]* It's very simple. Question: You were there Sunday. Did you see that bag of marijuana there at that time?

"A. Mr. Wickett, I already asked you once. I said I really would have to advise my attorney over this case, because it's getting involved.

"THE COURT: Mr. Magnum, I don't think that your answer to that question would incriminate you, so I direct you to answer.

"THE WITNESS: Well, I think I have my own rights too, and to an attorney don't I?"

\* \* \*

"Q. Do you know how much that cost?

"A. Well —

"THE COURT: Again, your answer to this possibly could incriminate, so I don't know, so I instruct you again that you may not answer.

"THE WITNESS: I ain't going to answer that.

"Q. (By Charles Wickett) Did you contribute any

money towards its purchase? Again you should ask the Judge.

"THE COURT: Again, your answer might tend to incriminate you so have that in mind before you answer.

"THE WITNESS: I am not answering no more questions."

We are convinced—and strongly so—that had the jury heard at trial the same testimony as the witness gave at the *Robinson* hearing, had the jury viewed and heard the witness's evasiveness on the key question of the transaction forming the basis for the conviction, had defense counsel been able to impeach the witness for a prior conviction of receiving stolen property,[1] the jury verdict may well have been different. Because the witness was not called by the prosecution the jury did not hear the testimony. In effect, the defendant was denied a fair trial. This being so, and but for *People v Giacalone*, 399 Mich 642, 645; 250 NW2d 492 (1977), the proper procedure in this case would be a new trial.

Does *Giacalone* preclude a new trial? The people argue that the answer is "yes" since *Giacalone* holds that where either the prosecution or defense knows a witness will assert his Fifth Amendment rights it is error to call such witness.

"The American Bar Association standards relating to the prosecution and defense functions provide that it is unprofessional conduct for a prosecutor or a lawyer representing a defendant

"—'knowingly and for the purpose of bringing inadmissible matter to the attention of the judge or jury to offer inadmissible evidence';

"—'to call a witness who he knows will claim a valid

---

[1] At the *Robinson* hearing the witness indicated that he had a prior conviction for receiving stolen property.

privilege not to testify, for the purpose of impressing upon the jury the fact of the claim of privilege.' " *Giacalone, supra,* at 645.

We are not persuaded that *Giacalone* goes so far. There, the prosecutor called as a witness an accomplice, whom the prosecutor knew in advance would take the Fifth. In that case, assertion of the Fifth Amendment rights was highly prejudicial to the defendant. Here, the situation is reversed since here the witness's resort to remaining silent, if anything, helps the defendant and prejudices the plaintiff. For these reasons, *Giacalone* is clearly distinguishable. In our initial opinion in this case, *People v Jerry Johnson,* 68 Mich App 697; 243 NW2d 715 (1976), we held that the failure to call the missing res gestae witness was sufficient error to mandate remand. Now, on remand, it is quite clear to us that the witness's testimony may well lead to a different verdict. This being so, the testimony is clearly more than cumulative. Accordingly, we reverse the trial court and remand for a new trial.[2]

Reversed and remanded for a new trial.

R. B. BURNS, J., concurred.

J. H. GILLIS, P.J. *(dissenting).* As pointed out by the majority, on appeal defendant contends, *inter alia,* that the trial court erred in ruling that the testimony of the missing witness was cumulative.

During his first appeal to this Court, defendant argued that the testimony of the missing witness was important to his defense for two reasons. First, the missing witness might have been able to

---

[2] On April 19, 1977, execution of defendant's sentence to prison for 18 months to 4 years was stayed by the trial court pending the outcome of the present appeal.

testify about how the marijuana came to be in
defendant's house trailer since he had visited the
trailer on the day previous to the police raid. Also,
during the raid some marijuana was found in the
missing witness's automobile. Second, the missing
witness could have been the secret police infor-
mant who had provided the police with informa-
tion concerning the marijuana found in defend-
ant's trailer. Defendant had indicated a desire to
put forth an entrapment defense if the police
informant could be located.

This Court recognized the materiality of defend-
ant's arguments and stated:

"If the witness is produced, and, after hearing his
testimony, the court is at that time convinced that it is
merely cumulative, then defendant Jerry Johnson's
conviction will be affirmed. If the witness is produced,
and, after hearing his testimony, the court is convinced
that it contains new evidence of a material nature, then
a new trial is ordered as to defendant Jerry Johnson."
*People v Jerry Johnson,* 68 Mich App 697, 702-703; 243
NW2d 715 (1976).

The circuit court's opinion, which concluded that
the missing witness's testimony was cumulative,
summarized the witness's testimony as follows:

"That on January 31, 1974, he was in defendant's
home at the time the officers arrived and also present
were the defendant, defendant's wife, Dawn Johnson,
Marty Warner and Warner's wife, Mary Sue Warner;
that witness had gone there on business; that he did not
recall what the officers said while he was present; that
the officers came in, went from room to room and found
some 'pot'—he doesn't know where they found it; that
the officers placed this substance on the counter and at
the time it was in plastic bags; that he had been in
defendant's home for one-half to one hour before the
officers arrived; that the defendant was a friend of

witness and that witness went to defendant's home
every day; that the witness owned no part of the
marijuana which was seized by the officers nor did he
go with the defendant when he acquired it; that he was
in defendant's house on Sunday night before the raid
and saw no bag of 'pot' at that time; that he did not
inform the police of the presence of marijuana in de-
fendant's house. Witness at one point exercised his 5th
Amendment right when he was questioned by defense
counsel as to his possible involvement in drug related
activities."

A careful review of the record supports the trial
court's determination. The missing witness's testi-
mony offered no further enlightenment as to the
transaction in question other than the testimony
originally presented at defendant's trial. *People v
Keefe,* 69 Mich App 431; 245 NW2d 78 (1976),
*People v Saunders,* 68 Mich App 546; 243 NW2d
679 (1976).

It should also be noted that there is no indica-
tion whatsoever that the missing witness had any
connection with the investigation which resulted
in defendant's arrest. The missing witness's use of
the Fifth Amendment in response to defense coun-
sel's questions suggests that he may well have
been an accomplice. Additionally, in light of the
witness's assertion of his Fifth Amendment rights,
it would be improper for the prosecution or de-
fense to call him to testify at any subsequent trial.
*People v Giacalone,* 399 Mich 642; 250 NW2d 492
(1977).

The other issues raised by defendant do not
warrant a discussion by this Court and do not, in
my opinion, constitute reversible error.

I would affirm the conviction.