*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JAMES ROBERT CRUMBLEY,

        Defendant-Appellant.

FOR PUBLICATION
March 23, 2023

No. 362210
Oakland Circuit Court
LC No. 2022-279989-FH

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JENNIFER LYNN CRUMBLEY,

        Defendant-Appellant.

No. 362211
Oakland Circuit Court
LC No. 2022-279990-FH

Before: MURRAY, P.J., and RIORDAN and YATES, JJ.

RIORDAN, J. (*concurring*).

I concur with JUDGE MURRAY's opinion and join it in full, but write separately to explain why I do so.

The difficult question in this case is whether the prosecution presented sufficient evidence at the preliminary examination to establish probable cause with respect to proximate causation, which is "a legal construct designed to prevent criminal liability from attaching when the result of the defendant's conduct is viewed as too remote or unnatural." *People v Schaefer*, 473 Mich 418, 436; 703 NW2d 774 (2005). Proximate causation may be disputed when "the death is so remote from the defendant's conduct that it would be unjust to permit conviction. In such a case, the question for the jury is whether the defendant's conduct was the proximate or legal cause of the decedent's death." *People v Tims*, 449 Mich 83, 95; 534 NW2d 675 (1995). This ordinarily is an issue of reasonable foreseeability. See *People v Head*, 323 Mich App 526, 533; 917 NW2d 752

(2018).[1] Ultimately, however, "[t]he decision to attach causal responsibility for social harm . . . is made in a, hopefully, common sense manner, or by application of moral intuitions, a community sense of justice, and/or public policy considerations." Dressler, *Understanding Criminal Law* (3d ed.), Section 14.03[A], p. 187.

In the typical case, of course, the parents of a child, who might be characterized as troubled, cannot be held criminally liable for that child's own crime. "Criminal guilt under our law is personal fault. It is highly individualistic. It comes not from association, without more, be it with family or friends." *People v Sobczak*, 344 Mich 465, 470; 73 NW2d 921 (1955). See also *People v Gordon*, 60 Mich App 412, 419; 231 NW2d 409 (1975) ("Under our system of criminal justice, association with evil men [is] not sufficient to establish an inference of guilty participation."). Moreover, it long has been recognized that the failure of a parent to provide proper care for a child generally "is not a crime." See *Pierce Co v Magnuson*, 70 Wash 639, 644; 127 P 302 (1912). In a nutshell, the law simply does not permit criminal liability for poor parenting or insensitivity when confronted with a child's emotional swings or mental-health issues such as depression. Nor does the law permit criminal liability for parental irresponsibility with respect to a difficult, aggressive, or angry child. The fact that a child with such issues also may have access to a potentially dangerous instrumentality made available by his or her parents, such as a motor vehicle, a knife, or even a gun, does not necessarily affect these principles. If we do not prohibit a troubled child of driving age from operating a car provided by his or her parents, I discern no principled reason why those parents should automatically be subject to criminal liability if the troubled child uses the car to cause harm. So too with a gun, or any other commonly available instrumentality.

The difference between this case and the typical case in which a child commits a crime with a potentially dangerous mechanism, however, is that EC was not merely a troubled child with obvious mental-health problems. Instead, the morning of the shooting, EC drew a picture of a body that appeared to have two bullet holes in the torso, apparently with blood streaming out of them, which was near another drawing of a handgun that resembled the gun his parents, defendants James Crumbley and Jennifer Crumbley, had very recently gifted to him. The body in the drawing obviously could not have inflicted such wounds upon itself, so the logical inference is that the body was shot by another. Thus, this drawing suggests that EC not only was potentially suicidal, as school counselor Shawn Hopkins believed at the time, but also that he presented a danger to others with his handgun.[2] In other words, there was visual evidence, known by defendants, that EC was contemplating the act of gunshot wounds being inflicted upon someone.

---

[1] Much of our case law discussing proximate causation concerns whether an intervening cause of harm constitutes a superseding cause that severs the causal link because it is not "reasonably foreseeable." See, e.g., *Head*, 323 Mich App at 533-535. Defendants frame this appeal in such terms. As JUDGE MURRAY notes, however, it is arguable that this framework does not apply here because the conduct of defendants and EC was so intertwined. See *People v Rideout*, 272 Mich App 602, 609-610; 727 NW2d 630 (2006), rev'd in part on other grounds, 477 Mich 1062 (2007) (comparing "responsive intervening cause" with "coincidental intervening cause").

[2] Some of the other drawings and statements on the math worksheet, such as the statement, "My life is useless," clearly reflected EC's inner thoughts. It is reasonable to infer that the drawing of the body similarly reflected EC's inner thoughts.

In my view, this drawing, coupled with the other evidence aptly discussed by JUDGE MURRAY in the majority opinion, establishes probable cause that EC's conduct on the afternoon of November 30, 2021, was reasonably foreseeable by defendants. Simply put, this discrete evidence of considered harm to others distinguishes the situation here from the overwhelming majority of cases in which parents may not, and should not, be criminally liable for a child's crime. In the absence of such discrete evidence as is before us, the outcome of the instant appeal easily may have been different.

But the drawing itself is not sufficient to establish probable cause of proximate causation. While a prosecutor has wide discretion in deciding whom to charge with a crime, see *People v Farmer*, 193 Mich App 400, 402; 484 NW2d 407 (1992), I note that Hopkins conspicuously was not charged by the prosecution in this case despite his encounters with EC on November 29 and November 30, the day before and the day of the shooting, respectively. Although it is not the role of the judiciary to review prosecutorial charging decisions absent rare circumstances that are not present here, see *People v Perry*, 317 Mich App 589, 595; 895 NW2d 216 (2016), the preliminary examination indicates that Hopkins only was aware that EC engaged in "shooting" as "a hobby." He did not know that defendants recently had purchased a handgun for EC. Thus, Hopkins did not know that EC had immediate access to an unsecured handgun at home. It is reasonable that he may have assumed the gun that EC used for his shooting hobby only was accessible by defendants. As a result, while Hopkins perhaps could have inferred that EC contemplated harming others on the basis of the drawing of the body,[3] there is nothing to suggest that Hopkins also knew that EC had the means to effectuate this conduct. This is quite in contrast to the knowledge defendants possessed. In other words, the record suggests that it was far less foreseeable from the perspective of Hopkins, as opposed to defendants, that EC would harm others that day.[4]

In the end, our decision today is consistent with principles of proximate causation and individual responsibility in criminal law. Our legal system does not, nor should it, criminally punish people for subpar, odd, or eccentric parenting, or require that children be deprived of any instrumentality that otherwise is legal to possess and use. Moreover, I suspect that parents do not reasonably assume, as a matter of course, that their children will commit violent crimes. However, before us is the unusual case. EC was extraordinarily troubled, yet defendants nonetheless provided him with a handgun and, despite having discrete, disturbing evidence that EC contemplated harming others, did nothing when confronted with that evidence.

For these reasons, the prosecution established probable cause of proximate causation. Therefore, I concur.

/s/ Michael J. Riordan

---

[3] Before defendants arrived at the school that morning, EC personally assured Hopkins that he was not a threat to himself or others.

[4] The decision not to charge Hopkins, but charge defendants, can be justified by this distinction.